CASE 27.—INDICTMENT   AGAINST   W.   P.   YANCEY   FOR
CRIMINAL LIBEL.—November 5, 1909.

135   207
138   586

# Yancey  v.  Commonwealth

Appeal from Carroll Circuit Court.

SAMUEL M. WILSON, Special Judge.

Defendant convicted and appeals.—Reversed.

1.   Constitutional Law—Right of Peaceable Assembly—Right to
     Petition Legislature—Circulation of Petition.—Under Const.
     Sec. 1, subsec. 6, which provides that citizens of the state
     shall have the right to assemble in a peaceable manner for
     their common good, and to apply to the government for the
     redress of grievances, or other proper purpose by petition, ad-
     dress, or remonstrance, any citizen or number of citizens
     may petition the Legislature of the state for any necessary
     and proper purpose, which includes the right to lawfully
     circulate a petition and procure others to sign it.
2.   Libel and Slander—Circulation of Petition—Privileged Com-
     munication.—Defendant, in a prosecution for criminal libel,
     was a judge of the county court. He caused to be sent to C.,
     who was the foreman of a former grand jury, a letter asking
     that C. sign an inclosed petition or an affidavit, to be used
     in impeachment proceedings before the Legislature, to the
     effect that G., who was the state attorney, for the judicial dis-
     trict in which all three parties lived, was an unfit and incom-
     petent officer, he being frequently and almost constantly
     drunk, etc. Held, that, if defendant in good faith believed G.
     to be such an unfit and incompetent officer as the letter and
     petition appear to make him, the defendant had the right to
     inquire of C. as to his knowledge of G.'s unfitness and
     incompetency, and to ask his assistance in procuring the im-
     peachment of G. by the Legislature.
3.   Libel and Slander—Circulation of Petition—Impeachment Pro-
     ceedings—Privileged Communication.—Ky. St. 1909, Sec. 2172
     provides that a person desirous of procuring the impeachment
     of any officer shall, by petition in writing to the House of Rep-
     resentatives signed by himself and verified by his own affida-

vit, and the affidavits of such others as he may deem necessary, set forth the facts upon which he prays an impeachment. Defendant, in a prosecution for criminal libel, was a judge of the county court. He caused to be sent to C., who was foreman of a former grand jury, an affidavit and petition addressed to the House of Representatives, charging G., the state attorney for the district in which all three parties lived, with acts reprehensible in one of his official position. Held, that if G.'s conduct was so bad as to make him a fit subject for impeachment, in rendering such assistance as would tend to bring it about, defendant and C. should be presumed to be discharging a social or public duty, and defendant's communication was within the scope of his duty as an officer and good citizen; it not being alleged in the indictment that it was made without reasonable grounds.

4. Libel and Slander—Circulation of Petition—Privileged Communications.—The right conferred by. Ky. St. 1909, Sec. 2172, to file the affidavits of other persons in proceedings for the impeachment of an officer necessarily carries with it the right to make reasonable and proper inquiry to obtain them.

5. Libel and Slander—Impeachment Proceedings—Judicial Proceeding—Privileged Communications.—An impeachment proceeding is a judicial proceeding and whatever writings in the way of petitions, affidavits, or pleas as may properly be used in an impeachment proceeding are, as to statements of fact contained therein, as much privileged as other writings or pleadings prepared for use or filed in the course of ordinary litigation.

GEO. B. WINSLOW, attorney for appellant.

JOHN J. HOWE, W. O. JACKSON, W. E. MOODY and M. H. BONNIE, of counsel.

POINTS AND AUTHORITIES.

PART I.   THE DEMURRER TO THE INDICTMENT.

(a) The failure to allege that the matter was written "of and concerning" F. C. Greene, is fatal. Criminal Code, sec. 132; Newman's P. & P. (New Ed.) sec. 230; 2 Roberson's Crim. Law, sec. 595, p. 807, citing Tracey v. Commonwealth, 87 Ky. 578; 13 A. & E. Ency. Plead. & Prac., page 99.

(b) The failure to allege that Greene had been, or was then, holding or expecting to hold some office was fatal. 2 Roberson's Crim. Law, sec. 595, p. 809; Commonwealth v. Stacy, 8 Phila. (Pa.) 617; 13 A. & E. Ency. Plead & Prac., p. 99 and notes; New-

Yancey v. Commonwealth.

man's Plead & Prac. sec. 230; 13 A. & E. Ency. Plead & Prac., p. 55; Townsend on Slander & Libel, sec. 388, p. 586.

(c) The legal effect of an innuendo. 13 A. & E. Ency., P. & P., p. 51, 52-54, 98, 99, 102; Townsend on Slan. & Lib., sec. 335-6, p. 579-80; 2 Roberson Crim. Law, sec. 595, p. 809; 2 Chit. Crim. Law, 310.

(d) The indictment is bad for duplicity. Tracey v. Commonwealth, 87 Ky. 584; Townsend on Slan. & Libel, sec. 117, 347; Nicholas v. Commonwealth, 78 Ky. 584; Ellis v. Commonwealth, 78 Ky. 133; Clymer v. Commonwealth, 23 K. L. R., 1042.

(e) The statements were absolutely privileged. Ky. Cons., sec. 1, subsec. 6; Ky. Statutes, sec. 2172.

### PART II.

(f) A peremptory instruction should have been given to find for the defendant.

(g) If the matter was not absolutely privileged, it was a case of qualified privilege.

(h) The law as to privilege communication. Bishop on Non-Contract Law, secs. 295, 302, 303; 18 A. & E. Ency. Law, 1023, 1029, 1030, 1041; 2 Roberson Crim. Law, sec. 592; 13 A. & E. Ency., P. & P., page 112, note 7; Nix v. Caldwell, 81 Ky. 291; Nicholson v. Rust, 21 Ky. Law Rep. 645; Coles v. Wilson, 18 B. M. 212.

JAMES BREATHITT, Attorney General, T. B. McGREGOR, Assistant; J. A. DONALDSON, M. S. DOWNS, CHAS. STRO-THER, ARTHUR COX, F. C. GREEN, Commonwealth Attorney of Counsel.

This is the first time that a jury of good citizens, the peers of any jury that might be selected in this or any other district in the State of Kentucky, has been called to pass on these troubles, and after a full, fair and impartial hearing, not influenced by any feeling or partiality or prejudice whatever, guided only by the stubborn facts as presented by the sworn statement of witnesses, examined before them and by the law, the instructions given them by a just, fair, intelligent, learned and upright Judge from another section of the State, influenced by no other motive than to fairly expound the law and instruct the jury as to the law that should control them in their deliberations and in reaching a fair and just conclusion, this jury, under all the facts as thus presented, and the law, as thus fairly and correctly given, after duly considering the whole case, rendered the verdict they did.

It was a just, fair and reasonable verdict, and the judgment rendered thereon should not be disturbed, but should be affirmed, with damages.

### AUTHORITIES.

Section 132, Criminal Code; Section 118, Criminal Code; Section 122, Criminal Code; Section 124, Criminal Code; Commonwealth v. Magowan, 1 Met., 368; Clark v. Commonwealth, 16 B. Monroe, 206; Tracy v. Commonwealth, 87 Ky. 582.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

At the January term, 1908 of the Carroll circuit court the grand jury found and returned against the appellant, W. P. Yancey, the following indictment: "The grand jury of Carroll county, in the name and by the authority of the commonwealth of Kentucky, accuse W. P. Yancey of the offense of criminal libel committed as follows, to-wit: The said W. P. Yancey in the county and circuit court aforesaid did, on the 17th day of January, 1908, within 12 months next before the finding of this indictment, unlawfully, willfully, maliciously, and knowingly write and publish a certain written statement, to-wit, a letter, which letter imputed to one F. C. Greene, then commonwealth attorney of the Fifteenth judicial district of Kentucky, dishonesty, misconduct in office, corruption in the discharge of his official duties, and incompetency in the performance of same, and did sign same and mail and deliver same to the following persons in Carroll county, Ky.: B. W. Ransdell, John Davis, A. S. Lee, A. G. Kendall, Arthur Carico, C. M. Bond, C. C. Coghill, J. C. Duvall, R. E. Crutcher, Harry Grobmeyer, Joe Hayes, Forrest Adcock, and divers others whose names are to this grand jury now unknown, all residents of Carroll county, Ky., said written letters being in words as follows: 'W. P. Yan-

cey, Judge of Owen County Court.  Owenton, Ken-
tucky, January 17, 1908.  Mr. C. C. Coghill, Carroll-
ton, Ky.—My Dear Sir:  We should like very much
to have you sign a petition or affidavit would be bet-
ter, something like the one I inclose.  I only send this
thinking it might answer the purpose, if not, all right.
A. petition has been circulated in this county pe-
titioning the Legislature to remove Greene from of-
fice.  We would like very much to have an affidavit
signed by you as foreman of the May term of the
grand jury to the effect that Greene is wholly incom-
petent and corrupt in his office.  If this meets your
approval you can write me by Wednesday of next
week as we want to go to Frankfort Thursday with
affidavits.  Yours truly in confidence, W. P. Yancey.'
The inclosure in said letter and part of said letter is
in words and figures as follows: 'We, the undersigned
citizens of Carroll county, Ky., state that we were
members of the grand jury at the ——— term of the
Carroll circuit court, for the year 1907, and that dur-
ing that said term of the court, the commonwealth at-
torney for the Fifteenth judicial district of Kentucky,
one F. C. Greene, was constantly and habitually
drunk, so much so that he was incapacitated from at-
tending to the duties of his said office in a proper and
becoming manner; that at the close of the term of our
said service as grand jurors, when several indict-
ments had been prepared, the said F. C. Greene could
not be found, and that we found that he was trying
to make his escape from the city of Carrollton, and
that it was necessary for us to have·the said Greene
arrested by the sheriff of Carroll county and returned
to the jury room, in order that he might sign the said
indictments.  The affiants state that the said F. C.
Greene has persistently and continuously shown his

incompetency and unfitness for the office of common-
wealth attorney, in that he is frequently and almost
constantly drunk, and they respectfully ask and peti-
tion the Legislature of Kentucky to impeach the said
Greene and remove him from his said office.' Now
'he grand jury says that said Yancey wrote said letter
and caused said inclosure to accompany same, and
vouched for the truth of same, well knowing at the
time he so published same that it was and is false, li-
belous, infamous, and malicious, and same was and is
false and libelous, and same was so done by the said
Yancey with the malicious purpose and criminal intent
to injure said F. C. Greene in his profession and in
the discharge of his official duties and against the
peace and dignity of the commonwealth of Kentucky.
F. C. Greene, Commonwealth Attorney, Fifteenth
Dist. of Kentucky.'' The trial of appellant resulted in
his conviction of the alleged criminal libel, his punish-
ment being fixed by verdict of the jury at a fine of
$500. Appellant entered motion in arrest of judg-
ment, and also filed a motion and grounds for a new
trial, but both motions were overruled by the circuit
court, and these rulings gave cause for this appeal.

Appellant's first complaint is that the trial court
erred in overruling his demurrer to the indictment.
This complaint is mainly based upon the ground that
both the letter and the inclosed petition set forth in
the indictment were privileged communications, and
therefore their publication did not constitute an in-
dictable offense. Subsection 6, section 1, Bill of
Rights, Const., provides that citizens of the state
shall have ''the right of assembling together in a
peaceable manner for their common good, and of ap-
plying to those invested with the power of govern-
ment for the redress of grievances, or other proper

purpose by petition, address or remonstrance." Manifestly, the foregoing declaration of the Bill of Rights confers upon any citizen, or number of citizens, the right to petition the Legislature of the state for any necessary and proper purpose, and if one may lawfully sign his name to a petition to be presented to the Legislature for a proper purpose, he may likewise lawfully circulate the petition and procure others to sign it. The letter and inclosed petition set forth in the indictment show that appellant was seeking either a petition or affidavit from Coghill to be used in an impeachment proceeding, to be instituted in the Legislature against Greene, and nothing contained in the indictment negatives this idea. If, as these writings show appellant in good faith believed Greene, the commonwealth's attorney of the judicial district in which he and Coghill reside, to be such an unfit and incompetent officer as the letter and petition appear to make him, then appellant had the right to inquire of Coghill as to his knowledge of the alleged unfitness and incompetency of Greene, and to ask his assistance in procuring the impeachment of Greene by the Legislature.

Section 2172. Ky. Stat., provides: "A person desirous of procuring the impeachment of any officer shall, by petition in writing to the House of Representatives signed by himself and verified by his own affidavit, and the affidavits of such others as he may deem necessary, set forth the facts upon which he prays an impeachment." It will be observed that the paper Coghill was asked by appellant to sign was an affidavit and petition addressed to the House of Representatives. As appellant was judge of the Owen county court, and Coghill had been a member

of the grand jury during the Carroll circuit court at which Greene was charged with certain acts reprehensible in one of his official position, and both appellant and Coghill were citizens of the district of which Greene was commonwealth's attorney, the communication complained of was between persons having a common interest, and mainly in the nature of an inquiry of Coghill as to his knowledge of what Greene had done at the Carroll court. If Greene's conduct was so bad as to make him a fit subject of impeachment, it is no less than the truth to say that, in rendering such assistance as would tend to bring about his impeachment, appellant and Coghill should be presumed to have acted in the discharge of a social or public duty and from the standpoint of good citizenship. The communication was within the scope of appellant's duty as an officer and good citizen, and it is not alleged in the indictment that it was made without reasonable grounds. Not only were the letter and inclosure from appellant to Coghill in the nature of an inquiry and request for the latter's assistance, but it was also a confidential communication, for the letter closes with the words, "Yours truly in confidence." The inclosure contains no statement of fact made by appellant; it is merely a part of the inquiry, and in addition a statement of the facts the writer supposed to be in Coghill's possession, and which, if true, he was expected to swear to, in which event it would be used by appellant, in connection with the contemplated impeachment proceedings, as a petition or one of the affidavits allowed by the statute in support of the petition praying Greene's impeachment. The right conferred by the statute to file the affidavits of other persons in such a proceeding necessarily carries

with it the right to make reasonable and proper inquiry to obtain them.

An impeachment proceeding is a judicial proceeding; the Legislature being the trial court. This being true, whatever writings in the way of petitions, affidavits, or pleas as may properly be used in an impeachment proceeding are, as to the statements of fact contained therein as much privileged as other writings or pleadings prepared for use or filed in the course of ordinary litigation in the courts of the country. An excellent statement of the law on this subject, as we understand it, may be found in Roberson's Criminal Law, sec. 592: "There are certain communications which are privileged, and are not deemed libelous, because of the occasion upon which they are made, though the party making them may in fact be in error, and not able to prove them to be true. A communication is regarded as privileged if made in good faith, upon any subject-matter upon which the party communicating has an interest, or in reference to which he has a duty public or private and either legal, social, or moral, if the defamatory matter is honestly believed to be true by the person publishing it, and made to a person or body of men having a corresponding interest or duty. Thus proceedings in courts of justice, legislative proceedings, and petition and memorials to the Legislature are privileged." The rule here announced was approved by this court in Ranson v. West, 125 Ky. 457, 101 S. W. 885, 31 Ky. Law Rep. 82; Sebree v. Thompson, 126 Ky., 223; 103 S. W., 374, 31 Ky. Law Rep. 642, 11 L. R. A., (N. S.) 723. Also Cooley on Torts, sec. 251; Townsend on Slander and Libel, sec. 221; 18 Am. & Eng. Ency, of Law, 1023.

Being of opinion that the writings alleged in the indictment to be libelous belong to the class of communications regarded by the law as absolutely privileged, we conclude that the learned special judge erred in overruling the demurrer to the indictment. This view of the matter makes it unnecessary for us to consider the numerous additional contentions urged by appellant for a reversal.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.