THOMAS F. McCRAN, ATTORNEY-GENERAL, RESPONDENT, v. ANDREW GAUL, JR., APPELLANT.

Argued January 19, 1921 — Decided February 15, 1921

1. The provisions of section 2 of the Public Utility act (*Pamph. L.* 1911, *p.* 374) giving the governor power to remove any public utility commissioner for neglect of duty, &c., is not in contravention of article 3 of the constitution of this state, which, after dividing the power of government into three departments, declares that "no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others."

2. In a proceeding to remove a public utility commissioner on charges, it is not necessary that such charges be framed into the legal precision required in a formal proceeding in a court of law or equity. It is enough if they fairly and fully apprise the party against whom they are laid of the acts or omissions which are said to constitute official neglect of duty or misconduct.

On appeal from the Supreme Court, whose opinion is reported in 95 *N. J. L.* 393.

For the respondent, *Thomas F. McCran,* attorney-general.

For the appellant, *Josiah Stryker* and *Richard V. Lindabury.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The attorney-general of this state filed his information against the present appellant, challenging his right to hold the office of a member of the board of public utilities of the State of New Jersey to which he had been appointed by the governor of the state for a term of six years, commencing on the 1st day of May, 1919.

The ground of the challenge is that the present governor removed the appellant from his office on the 13th of October, 1920, for neglect of duty and misconduct in office; that the removal was based upon charges filed with the governor by the city of Jersey City (a copy of which was given to the appellant) and after a public hearing, of which he had due notice, and at which he submitted such proofs as he desired in refutation of the charges laid against him; and that he continues to retain the office notwithstanding the governor's action.

The appellant demurred to the information. The Supreme Court, after hearing argument, and on due consideration, overruled the demurrer and directed judgment of ouster against the appellant. From the judgment entered in pursuance of that direction the present appeal is taken.

The action of the governor, in removing the appellant, was considered by him not only to be justified, but required by section 2 of the Public Utility statute of 1911 (*Pamph. L.,* p. 374) which enacts that "the governor may remove any commissioner for neglect of duty or misconduct in office, giving him a copy of the charges against him and an opportunity of being publicly heard in person or by counsel in his own defence upon not less than ten days' notice." It

was contended by the appellant in the Supreme Court, and is now urged before us, that this statutory provision affords no justification of the governor's action for the reason that it is void because in contravention of article 3 of the constitution of this state which, after dividing the power of government into three departments, viz., the legislative, executive and judicial, declares that "no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others;" and for the further reason that it attempts to confer upon the governor a power which, under the constitution, is vested solely in the court for the trial of impeachments.

The alleged unconstitutionality of the statute was very vigorously pressed before the Supreme Court, very carefully considered by that tribunal, and very fully discussed by it in the opinion promulgated in the case. An expression of our own views upon the matter would be a mere repetition of those exploited by the Supreme Court, and we therefore content ourselves with saying that we fully concur in those views. To guard against misapprehension, however, we deem it proper to say that the statement in the Supreme Court's opinion to the effect that a proceeding before the court of impeachments "is highly penal in its nature" is one which we do not now either approve or dissent from. It is no. a necessary link in the chain of reasoning upon which the court's conclusion is rested, and it would seem to be out of harmony with our own declaration in the case of *State* v. *Jefferson,* 90 *N. J. L.* 507.

A further ground upon which the judgment is attacked is thus stated in the brief of appellant's counsel: "The Supreme Court erred in its determination that the charges given to the appellant accuse him of neglect of duty or misconduct in office." The pith of this contention is that, while the charges upon which the governor acted allege that, in the matters specified therein, the board of which the appellant was a member had been guilty of neglect of duty and misconduct in office, they fail to point out that he per-

sonally participated in or was responsible for any of the acts or omissions of the board in any of those matters. We do not consider this contention well founded. The statute does not contemplate the framing of such charges with the legal precision required in a formal pleading in a court of law or equity. It is enough if they fairly and fully apprise the party against whom they are laid of the acts or omissions which are said to constitute official neglect of duty or misconduct on his part. Where those acts or omissions are the acts or omissions of the board as a body he may or may not have been responsible for them. If he was not a member of the board or was absent and took no part in any one of the acts specified in the charges, or opposed them, he manifestly cannot be held to responsibility for such act or acts. Whether or not he was a member of the board at the time of the commission of the act or acts complained of is a matter of record, known or readily ascertainable by the person making the charges; but whether, if he was a member, he took no part in the act, or opposed it, or did not concur in any neglect to perform a duty resting upon the board, are matters known ordinarily only to himself and his fellow members. In such a situation the charges must, we think, be made against the board as a body, or not made at all, for upon what members the responsibility for those acts or omissions rests can only be ascertained by an investigation into the conduct of the affairs of the board. Such an investigation can, as a usual rule, only be made by authority of a statute; and that authority was vested in the governor by section 2 of the Public Utility act. The present appellant was notified by the governor that the charges involved his personal responsibility for the acts and omissions specified in them; and he was afforded an opportunity, of which he availed himself, to show, if he could, that he took no part in or had opposed those acts and was in no way responsible for those omissions.

It is further urged under this ground of reversal that as the acts or omissions specified in the findings of the governor related to matters resting in the discretion of the

board, and as there was no indication in those findings that
the proofs showed an intentional and willful abuse of that
discretion, the conclusion that the appellant was guilty of
neglect of duty or misconduct is without legal support. This
seems to us a *non sequitur*. If it be true, as counsel assume
(although we doubt the soundness of the assumption so far
as it applies to "misconduct" and consider it unwarranted
so far as it applies to "neglect of duty") that the neglect
of duty or misconduct in office denounced by the statute
must be of such a character as to indicate a willful disregard
of the obligations imposed upon the members of the board,
then the conclusion of the governor that the appellant "has
been guilty of neglect of duty and misconduct in office,"
coupled with his statement that because thereof he removed
the appellant from his office carries with it by necessary
implication a finding that the neglect of duty and miscon-
duct in office disclosed by the proofs taken on the hearing
were of the character which justified him in his action.

Lastly, it is argued that it is apparent on the face of the
information that some of the findings upon which the gov-
ernor's action was rested charge the appellant with respon-
sibility for acts or omissions which were done or occurred
prior to the time he became a member of the board; and
that therefore the judgment of removal pronounced against
him is unwarranted. The fact is true, but the conclusion
is unsound, and for this reason: several of the findings were
based upon charges of acts and omissions which occurred
during the appellant's membership in the board. It is to
be presumed, on this record, that those findings were justi-
fied by the proofs submitted at the hearing before the gov-
ernor; that they supported the conclusion that the appel-
lant was personally responsible, as a member of the board,
for those acts and omissions. This being so his removal by
the governor was legally justifiable; for, if he was respon-
sible for any one or more of such acts or omissions, the
governor's power of removal was complete.

The judgment under review will be affirmed.

TAYLOR, J. (concurring). I vote to affirm but not with the opinion. My vote for affirmance is based upon one ground solely and that is that the act giving the governor the right of removal is constitutional and therefore he acted within the power bestowed.

KALISCH, J. (dissenting). It is a paramount duty of a judicial tribunal to sustain the validity of a statute unless it is clearly in contravention of the organic law of the state.

No state policy, expediency or emergency can properly give vitality to an act, whether executive, legislative or judicial which is in violation, either expressly or impliedly, of the state constitution—the protoplasm of our state government.

When in construing a statute it is found necessary, in order to sustain its validity, to go to the extent of injecting into the constitution a sense or meaning not to be gathered from the express language of that charter of the rights and liberties of the people, then such construction is not permissible for the reason that, in effect, it would be tantamount to an amendment of the constitution and, therefore, a plain usurpation of a power confided by the constitution solely to the people of the state.

The conclusion reached by the Supreme Court and the views expressed in the prevailing opinion of this court on affirmance of the judgment of ouster given by the Supreme Court appear to me to rest upon an untenable construction of the various constitutional provisions relating to the subject in hand. For in my judgment, as will hereinafter be specifically pointed out, this court has undertaken to amend the constitution by sanctioning the validity of the erection of a judicial tribunal composed of the governor not only despite the injunction of the constitution that the departments of the executive, legislative and judicial shall be kept distinct, and that no person or persons belonging to or constituting one of these departments shall exercise any of the powers properly belonging to either of the others, except as therein expressly provided; but also in spite of the fact

that the constitution in express terms has created a court of impeachments composed of the senate and house of assembly clothed with judicial power to remove civil officers of the state found guilty of misdemeanor in office.

But before proceeding to discuss the constitutional questions which the state of the pleadings gives rise to, it is important to turn here to a consideration of a question which underlies the whole proceeding, and that is whether the case was properly before the Supreme Court and is so here.

The information is filed by the attorney-general, representing the state, on behalf of the state. Under our form of government one cannot conceive of the sovereign power of the state minus a governor. The governor is the executive of the sovereign power. We have this situation here. The state brings an information, practically by its executive, in order to have determined judicially the validity of his act as executive in removing the appellant. It is in reality a proceeding instituted by the governor against himself, since there is no one claiming the office of the appellant. The case of *State* v. *Governor, 25 N. J. L.* 331, was at the relation of a person claiming office seeking a *mandamus.* In the present case the executive removed the appellant from office which was substantially a judgment of ouster. The governor does not need the aid of the court to carry into effect his judgment of removal. If the ousted official refused to yield to the order of removal and surrender the documents or books belonging to the office, the governor had the power under the constitution to send sufficient force if it became necessary to oust the appellant and seize the books and documents. This is not a case where a writ of assistance is required. The executive needs none to enforce his orders. The proceedings in this case are in the nature of a writ of assistance in a Court of Chancery where the writ is used to obtain possession of premises which a refractory mortgagor whose property has been sold under a foreclosure refuses to yield possession.

The judgment of the Supreme Court was that the appellant be ousted from office. He had already been ousted by

the governor, and, therefore, the judicial sanction of the court was unnecessary. It seems to me that the attempt to test the validity of the legislative act empowering the governor to remove the utility commissioners for cause cannot be tested in this manner. Until the governor appoints the new commissioners and until they are confirmed by the senate and commissioned by the governor and have qualified for office, and demanded possession thereof, and prevented from exercising the same, there is no proper basis for an information in the nature of a *quo warranto*.

But assuming that the case is properly before us, it is clear to me at least, that the legislative act under which the governor removed the appellant is unconstitutional.

Section 2 of the Public Utilities act of 1911 (*Pamph. L., p.* 374) which, after providing that the members of the board shall have a term of six years, contains this clause: "The governor may remove any commissioner for neglect of duty or misconduct in office, giving to him a copy of the charges against him and an opportunity of being publicly heard in person or by counsel in his own defence upon not less than ten days' notice."

The appellant was charged with neglect of duty and misconduct in office. The charges preferred against him were in writing and were served upon him in accordance with the provision of the statute. He had a hearing on the charges before the governor, sitting in a judicial capacity as governor, was found guilty, and thereupon was removed by that executive from office.

The contention of appellant's counsel is that the statute under which the appellant was removed confers judicial power on the executive department of the government, thereby encroaching upon article 3 of the constitution, which declares as follows: "The powers of the government shall be divided into three distinct departments, the legislative, executive and judicial; and *no person or persons belonging to* or *constituting* one of these departments *shall exercise any of the powers* properly belonging to either of the others, except as herein expressly provided."

The exception has an important signification in that it strongly emphasized the express limitation on the three departments of government. It precludes the entertaining of any notion of the existence of any reserved power that may be lawfully exercised by the legislature in dealing with these departments, unless some warrant can be found therefor expressed in the constitution. The phrase "except as herein expressly provided" is unambiguous in its meaning and in the general sense in which it is used and, therefore, is not subject to any other construction or inference than the language itself imparts.

We search in vain through the constitution to find where any of the powers properly belonging to the judicial department have been conferred on the executive.

What we do find is that a judicial power which did not properly belong to the courts at common law but to a court of impeachments is conferred on a court of impeachments, composed of the senate and house of assembly in accordance with our form of government. It is classed by our constitution under the caption, "Judiciary," article 6, section 7, *placitum* 1, where its structure and judicial powers are defined. By article 5, *placitum* 11, of the constitution, the court of impeachments' sole judicial function appears to be to impeach and try a governor, and all other civil officers under the state for misdemeanor during their continuance in office and for two years thereafter. Thus we have the significant declaration of the constitution itself that the court of impeachments is to be classed with the judicial department.

The inquiry which first presents itself is this: Is the power attempted to be conferred on the governor by the second section of the Public Utilities act, a judicial power, and if so, does the constitution make by terms, either express or implied, the conferring of such power on the state's executive an exception to the constitutional mandate of article 3?

That the power attempted to be conferred by section 2 of the Public Utilities act on the governor to try the accused official for neglect of duty or misconduct in office on preferred written charges served on the defendant in accordance with

the provision of that section, and giving the accused a right to be heard in his defence in person or by counsel, and if found guilty subject to be removed by the governor, is the exercise of a judicial power was not seriously questioned by the attorney-general and was practically admitted by him to be the exercise of judicial power and therefore he placed himself squarely on the proposition, that the act of removal by the executive was an administrative one, which was properly within his province as executive, and hence the propriety of his order of removal could not properly be questioned. But this position appears to me to be clearly untenable. The power to remove is derived solely from section 2 of the statute referred to, and that power by the plain terms of that statute can only be exercised after charges preferred, a public hearing and a conviction, all of which are the characteristic elements of a judicial proceeding. The removal is an incident to the conviction. It was the sentence of the statutory tribunal of which the governor was the judge. Without a conviction of guilt the defendant could not have been removed.

There is nowhere to be found in the constitution any term which expressly or impliedly confers any such power on the governor as was exercised by him in the present case. A liberal reading of the constitutional enumeration of the powers conferred on the executive, does not hint at such a power as was exercised by him. *Placitum* 6 of article 5, which defines the powers which may be lawfully exercised by the governor, among other things, declares: "He shall be the commander in chief of all the military and naval forces of the state; he shall have power to convene the legislature or the senate alone, &c., &c., * * * he shall take care that the laws be faithfully executed, and grant," &c., * * *

It was suggested that the constitutional mandate that the executive shall take care that the laws be faithfully executed, impliedly clothed him with certain judicial powers. The force of this suggestion has not been made plain. The effect of this mandate was clearly to empower the governor to give effect to the laws, such as to protect the life, liberty

and property of the citizens of this state, with the force of the state if necessary, to suppress riots and lawlessness in case the courts or municipal authorities are unable to deal with the situation.

By no refinement of reasoning can even a plausible ground be found to support a theory that the constitutional clause referred to was intended to confer on the governor the exercise of judicial powers or the power to remove officers who are unfaithful to the trust reposed in them. For if such a construction, as suggested, was permissible, it would follow that the governor could properly remove our judges, prosecutors of the pleas and other constitutional officers in the exercise of the constitutional duty to "take care that the laws be faithfully executed."

In the opinion of the Supreme Court it is said: "Now in view of the fact that the constitution vests the legislative power in the senate and general assembly, the executive power in the governor, and 'the judicial power in the courts, the question comes down to this: Is the power of removal in question a judicial power in the sense that it properly belongs to the courts and is forbidden to be conferred by the legislature upon the governor? We think it is not."

If the court of impeachments is a court, as the constitution declares it to be, and if that court belongs to the judicial department of the government as the constitution says it does, how can it be fairly and accurately said that the judicial power exercised by the governor in removing the appellant does not belong to the courts; and if that power belongs to the courts, then how can it be justly said that the legislature is not forbidden to confer such judicial power on the executive?

As to the nature and quality of the power conferred by the legislature on the executive, by the statute under discussion and of the unconstitutionality of such a statute, I am content to rest upon the lucid and convincing reasoning of Chief Justice Beasley in the *Pritchard Case,* 36 *N. J. L.* 113, 114.

It is clear to my mind that the framers of our constitution were careful to guard against clothing the executive with power of removing civil officers of the state, realizing fully that efficiency in service to the state could not be properly maintained, if the term of office could be abridged at the whim or caprice of the executive who made the appointment or of his successor.

It has also been suggested that the appellant was not such an official of the state contemplated by the constitution who could only be properly removed by a court of impeachments. For light on the subject we must again turn to the constitution. Article 7, section 2 of that instrument, under the caption "Civil Officers," after enumerating the various state and county officials, including justices of the peace, prescribing their terms of office, &c., by *placitum* 9, declares as follows: "All other officers, whose appointments are not otherwise provided for by law, shall be nominated by the governor, and appointed by him, with the advice and consent of the senate; and shall hold their offices for the term prescribed by law."

It is conceded that the appellant is a state officer. He was nominated and appointed by a preceding governor, confirmed by the senate and commissioned by the governor. Although not an official whose title or style of office is mentioned in the constitution, nevertheless he comes within the constitutional designation of a civil officer of this state, by virtue of constitutional authority.

The only distinguishing features between the appellant's office and one holding a state office mentioned in the constitution is that the latter's term of office is fixed by the constitution, and that the emoluments of the office cannot be diminished during the term and that the office cannot be abrogated by the legislature, whereas the former's term of office is fixed by the legislature creating the office and the office may be abrogated. Otherwise the two state officials stand on an equal plane as civil officers of this state holding under constitutional authority.

Article 5 of the constitution, *placitum* 11, declares: "The governor and all other civil officers of this state shall be liable to impeachment for misdemeanor in office during their continuance in office and for two years thereafter." Can any one reasonably doubt for a moment that this constitutional declaration applies to the appellant holding the office of utility commissioner? He is a civil officer of the state, nominated and appointed by the governor, confirmed by the senate and commissioned by the governor.

To maintain that the constitutional declaration applies only to officers expressly mentioned in the constitution and not to other civil officers, has no foundation in reason or good sense. A complete answer is that the constitution does not recognize any such distinction.

To attempt to draw any such distinction borders upon the absurd. For under our constitution a justice of the peace is a constitutional officer and cannot be removed from office except by a court of impeachments. Does it conform with good sense because that official is mentioned in the constitution, and thus a constitutional officer with a jurisdiction only county wide, is entitled to a solemn trial by the court of impeachments while a public utility commissioner whose public duties extend throughout the state and concern the life and property of the citizens of this state, is denied this right because the title of the office is not expressed in the constitution but in a legislative act under the authority of the constitution?

It has been held that where a constitution provides a method of impeachment of officers, that method is exclusive and the power which the legislature might otherwise be regarded as possessing is taken away. 29 *Cyc.* 1414, and cases cited in the note; 22 *Rul. Cas. L.* 561, § 265.

It has been further insisted upon that because the constitution provides for impeachment of an official only in case he has committed a misdemeanor, criminal in character, and that, therefore, there is no method provided by the constitution for the trial and removal of an official who is guilty

of neglect of duty or misconduct in office, and in consequence the legislature could properly provide a method.

The words "misdemeanor in office," as used in the constitution, must be given its general meaning and not a technical legal meaning. In the sense in which it is used in the constitution, it includes neglect of duty or misconduct or misbehavior in office regardless of the fact whether or not such neglect of duty or misconduct or misbehavior amounts to an indictable offence.

The fact that the constitution declares that impeachment proceedings shall not be a bar to an indictment does not in my judgment tend to narrow the phrase "misdemeanor in office." For if we were to give the technical legal meaning of the word "misdemeanor" it would exclude high misdemeanors which are distinct offences from misdemeanor. Such a construction would lead to absurd results too numerous to mention.

The framers of the constitution clearly intended through the court of impeachments to protect the public against incompetent, neglectful and dishonest officials. This could only be effectually accomplished by removal of the official found guilty and to disqualify him from holding office hereafter.

For the reasons given, I vote to reverse the judgment of the court below.

Judges White, Heppenheimer and Williams concur in the views expressed herein.

WHITE, J. (dissenting). I vote to reverse because I think, as contended by counsel for the defendant and conceded by the attorney-general for the state, that the action of the governor in finding the defendant guilty of neglect of duty and misconduct in office after a hearing, is "judicial" in character. Our constitution vests all judicial power in the courts, which courts it expressly enumerates. This enumeration, besides the Court of Errors and Appeals, the Supreme Court, &c., &c., includes the court of impeachment and also such inferior courts as shall from time to time be established. The governor is not included in this enumeration. His consti-

tutional powers are exclusively "executive." Chief Justice Beasley, in *State* v. *Pritchard,* 36 *N. J. L.* 101, after going over the whole subject in his masterly manner, said: "It is obvious, therefore, that the governor of this state is not possessed of a particle of judicial capacity."

What is it, then, that the legislature has done in providing in the Public Utility act of 1911, that "The governor may remove any commissioner for neglect of duty or misconduct in office, giving him a copy of the charges against him and an opportunity of being publicly heard in person or by counsel in his own defence upon not less than ten days' notice?"

1. Is it the creation of an additional court of impeachment? If we accept the contention of the attorney-general that this judicial action of the governor under this legislation is final and absolute and not subject to supervision or review in any manner whatsoever by the courts, then an affirmative answer to this question would seem inevitable, because under the constitution the court of impeachment alone of the courts of first instance renders decisions which are not subject to appeal to or review by any higher or other tribunal. Of course, such a view would render the act unconstitutional.

2. Or is what the legislature has done by this section, the creation of an inferior court "or judicial body for a special purpose," using the language of Chief Justice Gummere speaking for this court in *Voight* v. *Board of Excise,* 59 *N. J. L.* 358? If so, the Supreme Court may, under its constitutional jurisdiction by its writ of *certiorari,* review the action of such inferior judicial tribunal. But the Supreme Court's writ of *certiorari* cannot reach the governor of the state, a co-ordinate branch of the state government, or if it can, the Supreme Court is helpless to enforce obedience to the writ because the person of the governor, who is the personification of the sovereignty of the people of the state, cannot be taken into custody by the sheriff under process for contempt. This construction, therefore, of the provision in question renders it unconstitutional, because

an infringement of the constitutional jurisdiction of the Supreme Court.

3. Or does what the legislature has done constitute a vesting in the executive of the state of an administrative, in the sense of ministerial, power depending for the legality of its exercise upon the existence of the fact upon the happening of which only the power springs into being, but the existence of which fact can be challenged and tried out in the courts, thereby sustaining or defeating, as the case may be, the attempted exercise of the power? This view, I think, is supported by what seems to me to be the obvious meaning of the section in question, namely, that it is the act of betrayal of his public trust by the commissioner himself which forfeits his office, and not the order of the governor removing him, as it would be if no term for the office were prescribed and the governor consequently had the power to remove at will, or if, with the term prescribed, the statute expressly gave the governor the power of removal at will. This latter situation is, I think, the "statutory specification" which Chief Justice Beasley meant in the *Pritchard case, supra,* when he said: "I have not been able to perceive any intimation, not even the least, either in the constitution of this state, its system of laws or legal observances, that this right of superintendence over, or power to remove from public office, except in instances of statutory specifications, has been delegated to the executive head of the government." It is the "power to remove" which the great Chief Justice thought might be given the governor by statute, and not the power to try and adjudge a forfeiture of office resulting from malfeasance therein. If this view is the correct one the information filed in this case is insufficient, and, therefore, the demurrer to it should have been sustained, because such information does not allege that this defendant was guilty of any specified act of neglect or misconduct, nor does it even in general terms say that the defendant was guilty of neglect or misconduct. All that it says is that the governor, after charges filed and a hearing after ten days' notice, found the defendant guilty of neglect and misconduct and removed him from

office. The defendant, therefore, had no opportunity to traverse by a plea the existence of the fact that he was guilty of the offences, the commission of which alone forfeited his office.

Of course, I agree that if some person other than the governor of the state had been given this power to try, find guilty, and remove from office this defendant for betraying his office in the manner prescribed in the act, such other person would constitute "a judicial body for that purpose" and as such would be an inferior judicial tribunal, as provided for in the constitution, whose actions would be subject to review by the Supreme Court through its writ of *certiorari* (*In re Roebling's Estate,* 108 *Atl. Rep.* 359) ; and I also agree that the decision and judgment of removal of such special judicial body could not be attacked collaterally in information in the nature of *quo warranto* proceedings, brought practically to enforce the decision. But, as above pointed out, to hold the governor to be such a special judicial tribunal would render the act void, by making it create under the constitutional authority to establish inferior judicial tribunals, a judicial tribunal which was not in fact inferior because no appeal could be taken from its decisions, and it was not subject to the writ of *certiorari* of the Supreme Court.

To me it is unthinkable that under our form of government a man who has the right by law to hold an office (if it continues to exist) during a fixed term, unless he, by his own misconduct, betrays that office, can be removed before the expiration of the term because of such betrayal without being tried and found guilty thereof in the courts, where by our constitution all judicial power is lodged. I am well aware that public office is not private property. Neither is a man's good reputation nor his right to pursue happiness, nor indeed his right to life itself, a property right. But all of these rights are protected by our constitution and by our laws through the medium of our courts and can only be taken away by due process of law. Can it be that the right of the holder of a public office with a fixed term, to serve his fellow-

men in that office and to receive the honors and emoluments thereof until the end of that term, unless he shall, by his own betrayal of his office, forfeit it, is not a subject entitled to the protection of the courts, because it is not a property right? Surely not. Most good citizens hold their good name, their good repute and esteem among their fellowmen, of more value than mere property. Nor is this view confined exclusively to good citizens. *Iago*, who certainly was not a good citizen, seems to have been moved by the same sentiment when he said:

> "Good name in man and woman, dear my lord,
> Is the immediate jewel of their souls:
> Who steals my purse steals trash; 'tis something, nothing;
> 'Twas mine, 'tis his, and has been slave to thousands;
> But he that filches from me my good name
> Robs me of that which not enriches him
> And makes me poor indeed."

And in *Campbell* v. *Gilkyson*, 78 *N. J. L.* 327, Chief Justice Gummere, speaking for this court and quoting *Matter of Hathaway*, 71 *N. Y.* 238, and *United States* v. *Hartwell*, 6 *Wall.* 385, said that a public office is "the right to exercise generally, and in all proper cases the functions of a public trust or employment, and to receive the fees and emoluments belonging to it, and to hold the place and perform the duty for the term and by the tenure prescribed by law," and this court there held that this right enjoyed the full protection of our courts against unlawful invasion under cover of unconstitutional legislation.

But it is said the interest of the public is paramount and that in that interest the governor must not be hampered in the speedy, summary removal of faithless officials. The answer to this is that if that were the purpose of the legislature in the Public Utility act it should have given the governor the power to remove at will. If it intended the members of this commission, practically one of the most if not the most important of the tribunals in the state, to be subject to removal at the pleasure of the governor it should have said so. This it did not do. On the contrary, as I view it, it said

that the governor should not have the removal-at-will power, but that the members should hold office for a definite term unless they, by their own official neglect or misconduct, themselves forfeited their offices. In this connection it is interesting to note that not only did the counsel for all of the defendants contend, but the attorney-general for the state expressly admitted, that the defendants had not been guilty of any intentional wrong-doing or neglect, that is, had not been guilty of what is ordinarily understood as malfeasance in office. The charges themselves and the findings of guilt seem to substantiate this view. Apparently the most that is contended for is that, in the judgment of those who framed the charges and of the governor who sustained them, the members of this commission should, under the discretion vested in them by the act, have acted differently in certain specified ways than they did act. I find great difficulty in differentiating a removal for such an alleged cause from a removal under a pure removal-at-will power, which latter I do not think the legislature intended the governor to have.

But, however that may be, my conclusion is that if the provision in question of the act can be sustained at all it can only be sustained by holding that it is not the action of the governor in removing the defendant from office, but the betrayal of a public trust by the defendant himself which works the forfeiture of his office, and that in declaring such forfeiture the governor's acts are administrative, or ministerial, if you will, and that in proceedings by information in the nature of a *quo warranto* to actually oust defendant from office, the latter has the right to raise an issue of his guilt and to have that issue tried out in the courts established by the constitution and in the manner prescribed by law. That opportunity the information in this case did not give him, because it did not allege his guilt, and the demurrer, I think, should have been sustained.

I am requested by Justices Swayze, Kalisch and Katzenbach and Judges Williams and Heppenheimer to say that they concur in the views herein expressed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, PARKER, BERGEN, TAYLOR, GARDNER, ACKERSON, JJ.   7.

*For reversal*—SWAYZE, KALISCH, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, JJ.   6.