WALTER D. VAN RIPER, PLAINTIFF, v. T. JAMES
TUMULTY, DEFENDANT.

Decided January 5, 1948.

For the plaintiff, *Harry Green.*

For the defendant, *John F. Lynch, Jr.* (*John A. Matthews,* of counsel).

SMITH, Jos. L., C. C. J. and S. C. C.   The plaintiff's complaint against the defendant is in two counts, charging alleged slander and libel.

The first count, among other allegations, alleges the plaintiff is a member of the New Jersey Bar and Attorney-General of the State of New Jersey and that the defendant also is a member of said bar.

On or about March 22d, 1946, at Trenton, New Jersey, plaintiff charges the defendant with falsely and maliciously uttering and speaking of and concerning the plaintiff in his profession and calling as a lawyer, and Attorney-General, false, malicious and defamatory matter as more fully set forth in said complaint.

The second count alleges that on April 3d, 1946, the defendant published and circulated in Trenton, New Jersey, written false, malicious and defamatory matter, fully set out in said second count, and re-alleges all of the first count except paragraph 9 of said first count which said paragraph sets forth the uttered and spoken statements complained of in said first count.

The defendant's answer admits and denies different paragraphs and portions of both counts.

It also sets up seven separate defenses to all counts and an eighth separate defense to the second count.

In his reply the plaintiff denies and admits different parts of the answer and separate defenses.   He also reserved his right to move to strike portions of the answer and the grounds therefor.

The plaintiff's motion, in accordance with objections to said answer so reserved, is now before this court on a motion to strike the following portions of the answer:

(1) First count, paragraph 4, which alleges "that said attacks have been and are justified, and are for the public good," upon the grounds that same are irrelevant, argumentative and conclusions of facts and law.

(2) First count, paragraph 7, which alleges "that plaintiff should resign or be removed from the office of Attorney-General of the State of New Jersey" upon the grounds that same is irrelevant, argumentative, and conclusions of facts and law.

The plaintiff also moves to strike the second, third, fourth, fifth, seventh, and eighth separate defenses to both counts on the grounds that these defenses are insufficient in point of law, and fail to allege facts, and set forth conclusions of fact and law, and he also moves to strike the sixth separate defense on the ground it is insufficient in point of law.

The plaintiff contends that Supreme Court rule 40, *N. J. S. A. tit.* 2, which would be effective, pertinent provision is as follows:

"In lieu of a motion to strike out, the same objection, and any point of law (other than a question of pleading or practice) may be raised in the answering pleadings, and may be disposed of at, or after, the trial; but the court, on motion of either party, may determine the question so raised before trial, and if the decision be decisive of the whole case the court may give judgment for the successful party or make such order as may be just. (Rule 6, Practice Act 1912.)"

No reference is made in the notice of motion asking the court to enter judgment for defendant if motion to strike defenses is denied.

Let us consider the fourth, fifth, and seventh separate defenses. These three defenses claim absolute constitutional privilege, as well as absolute privilege granted to counsel in a judicial or *quasi*-judicial proceeding.

It is contended by counsel for the plaintiff that the court's ruling on this motion in disposing of these fourth, fifth, and seventh defenses, may be dispositive of this case as a matter

of law. That if this court denies the motion to strike the fourth, fifth, and seventh separate defenses, and holds that same, or any one thereof, constitute good, valid and complete defenses and gave defendant absolute immunity to utter the words or publish the statement in question either during a legislative session or judicial hearing or both, said decision would be dispositive of the whole case and as a matter of law defeat plaintiff's recovery, and the court may give judgment for the successful party or make such order as may be just in accordance with said Supreme Court rule 40.

For the purposes of this motion the matters stated in the separate defenses are taken to be admitted as true.

This motion necessarily opens the entire record for consideration.

The plaintiff admits at the time of the utterance of the words quoted in said complaint that the defendant was a duly elected member of the House of Assembly of New Jersey.

Counsel for the plaintiff contends that the defendant waived these defenses of privilege. There is nothing in the record in writing waiving such defenses of privilege and there is no stipulation so agreeing and it might well be disregarded, however, it will be commented on. Our statute controls just such a situation as the plaintiff claims. *R. S.* 2:27–6; *N. J. S. A.* 2:27–6, provides:

"Admissions, consents, or agreements made out of court by the parties or their attorneys or counsellors with respect to the conduct of an action shall not be taken notice of by the court unless they are in writing."

The fourth, fifth and seventh separate defenses could not be stricken on the ground of waiver as the statute had not been complied with in accordance with the provisions therein set forth.

From a consideration of the correspondence between counsel it is clear as evidenced by plaintiff's counsel's letters of August 30th, 1946, and December 2d, 1946, and defendant's counsel's letters of September 4th, 1946, and December 5th, 1946, that the defendant intended to waive the defenses of privilege if the motion to advance this case for immediate or early trial was granted at the opening of the September term, 1946. This said motion was twice denied.

Under article 4, section 4, paragraph 8, of the New Jersey Constitution, *N. J. S. A.*, it is provided:

"8. Privilege of Members. Members of the Senate and General Assembly shall, in all cases except treason, felony and breach of the peace, be privileged from arrest during their attendance at the sitting of their respective houses, and in going to and returning from the same; and for any speech or debate in either house, they shall not be questioned in any other place."

The plaintiff urges these defenses should be stricken because the words and statements complained of were made before the Judiciary Committee of the House of General Assembly which he argues is not the House.

House clearly applies to the membership of the Senate and General Assembly or any duly constituted part of the Senate or General Assembly such as a committee created by the membership of the General Assembly under its rules, authority and powers. The legislature is composed of the members of the Senate and the General Assembly.

House means the meeting of members of either the Senate or General Assembly as a whole or by committee. If a committee of the General Assembly is not a part of the House of General Assembly as the plaintiff contends, then what is it? A committee of the General Assembly created by the General Assembly itself from its own members acts for the General Assembly as a part of the legislature and enjoys the same privileges as when its full membership is in session. These alleged statements were made by the defendant while a member of the General Assembly before a duly constituted Judiciary Committee of said General Assembly in the performance of his duties as an Assemblyman, and therefore, he enjoyed the constitutional privilege granted to a member of the General Assembly and Legislature. *Cole* v. *Richards,* 108 *N. J. L.* 356; 158 *Atl. Rep.* 466.

Our state constitution, article 4, section 4, paragraph 8, is identical, word for word, with article 1, section 6, clause 1, of the United States Constitution in so far as its provisions are applicable to the instant motion.

The history and the reasons for these provisions in the

federal and state constitutions, including the New Jersey Constitution, are stated in *Kilbourn* v. *Thompson* (*U. S. Supreme Court*, 1880), 103 *U. S.* 168, and *Coffin* v. *Coffin* (*Mass.*, 1808), 4 *Mass.* 1; *Cochran* v. *Couzens*, 59 *App. D. C.* 374; 42 *Fed. Rep.* (*2d*) 783; (*certiorari* denied, 282 *U. S.* 874; 51 *S. Ct.* 79).

Mr. Justice Miller, speaking for the United States Supreme Court, in *Kilbourn* v. *Thompson, supra* (at *pp.* 201-204), said:

"The House of Representatives is not an ordinary tribunal. The defendants set up the protection of the constitution, under which they do business as part of the Congress of the United States. That constitution declares that the senators and representatives 'shall in all cases, except treason, felony, and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses, and in going to and returning from the same; and for any speech or debate in either House they shall not be questioned in any other place.' "

Is what the defendants did in the matter in hand covered by this provision? Is a resolution offered by a member, a speech or debate, within the meaning of the clause? Does its protection extend to the report which they made to the House of Kilbourn's delinquency? To the expression of opinion that he was in contempt of the authority of the House? To their vote in favor of the resolution under which he was imprisoned? If these questions be answered in the affirmative, they cannot be brought in question for their action in a court of justice or in any other place. And yet if a report, or a resolution, or a vote is not a speech or debate, of what value is the constitutional protection?

We may, perhaps, find some aid in ascertaining the meaning of this provision, if we can find out its source, and fortunately in this there is no difficulty. For while the framers of the constitution did not adopt the *lex et consuetudo* of the English Parliament as a whole, they did incorporate such parts of it, and with it such privileges of Parliament, as they thought proper to be applied to the two Houses of Congress. Some of these we have already referred to, as the right *to*

make rules of procedure, to determine the election and quali-
fication of its members, to preserve order, &c. In the sentence
we have just cited another part of the privileges of Parliament
are made privileges of Congress. The freedom from arrest
and freedom of speech in the two Houses of Parliament were
long subjects of contest between the Tudor and Stuart kings
and the House of Commons. When, however, the revolution
of 1688 expelled the last of the Stuarts and introduced a new
dynasty, many of these questions were settled by a bill of
rights, formally declared by the Parliament and assented to
by the crown. 1 *W. & M., st.* 2, *c.* 2. One of these declara-
tions is "that the freedom of speech, and debates, and pro-
ceedings in Parliament, ought not to be impeached or ques-
tioned in any court or place out of Parliament."

In *Stockdale* v. *Hansard,* Lord Denman, speaking on this
subject, says: "The privilege of having their debates unques-
tioned, though denied when the members began to speak their
minds freely in the time of Queen Elizabeth, and punished
in its exercise both by that princess and her two successors,
was soon clearly perceived to be indispensable and universally
acknowledged. By consequence, whatever is done within the
walls of either assembly must pass without question in any
other place. For speeches made in Parliament by a member
to the prejudice of any other person, or hazardous to the public
peace, that member enjoys complete impunity. For every
paper signed by the speaker by order of the House, though
to the last degree calumnious, or even if it brought personal
suffering upon individuals, the speaker cannot be arraigned
in a court of justice. But if the calumnious or inflammatory
speeches should be reported and published, the law will attach
responsibility on the publisher. So if the speaker by authority
of the House order an illegal act, though that authority shall
exempt him from question, his order shall no more justify the
person who executed it than King Charles's warrant for levy-
ing ship-money could justify his revenue officer."

Taking this to be a sound statement of the legal effect of
the Bill of Rights and of the parliamentary law of England,
it may be reasonably inferred that the framers of the constitu-
tion meant the same thing by the use of language borrowed
from that source.

Many of the colonies, which afterwards became States in our Union, had similar provisions in their charters or in bills of rights, which were part of their fundamental laws; and the general idea in all of them, however expressed, must have been the same, and must have been in the minds of the members of the constitutional convention. In the Constitution of the State of Massachusetts of 1780, adopted during the war of the Revolution, the twenty-first article of the Bill of Rights embodies the principle in the following language: "The freedom of deliberation, speech, and debate in either House of the legislature is so essential to the rights of the people, that it cannot be the foundation of any accusation or prosecution, action, or complaint, in any other court or place whatsoever."

This article received a construction as early as 1808, in the Supreme Court of that state, in the case of *Coffin* v. *Coffin, supra,* in which Mr. Chief Justice Parsons delivered the opinion. The case was an action for slander, the offensive language being used in a conversation in the House of Representatives of the Massachusetts legislature. The words were not delivered in the course of a regular address or speech, though on the floor of the House while in session, but were used in a conversation between three of the members, when neither of them was addressing the chair. It had relation, however, to a matter which had a few moments before been under discussion. In speaking of this article of the Bill of Rights, the protection of which had been invoked in the plea, the Chief Justice said: "These privileges are thus secured, not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal. I, therefore, think that the article ought not be construed strictly, but liberally, that the full design of it may be answered. I will not confine it to delivering an opinion, uttering a speech, or haranguing in debate, but will extend it to the giving of a vote, to the making of a written report, and to every other act resulting from the nature and in the execution of the office. And I would define the article as securing to every member exemption from prosecution for everything said or done by him as a representative, in the exercise of the func-

tions of that office, without inquiring whether the exercise was regular, according to the rules of the House, or irregular and against their rules. I do not confine the member to his place in the House; and I am satisfied that there are cases in which he is entitled to this privilege when not within the walls of the representatives' chamber."

The report states that the other judges, namely, Sedgwick, Sewall, Thatcher, and Parker, concurred in the opinion.

This is, perhaps, the most authoritative case in this country on the construction of the provision in regard to freedom of debate in legislative bodies, and being so early after the formation of the Constitution of the United States, is of much weight. We have been unable to find any decision of a federal court on this clause of section 6 or article I, though the previous clause concerning exemption from arrest has been often construed.

Mr. Justice Story (section 866 of his Commentaries on the Constitution) says: "The next great and vital privilege is the freedom of speech and debate, without which all other privileges would be comparatively unimportant or ineffectual. This privilege also is derived from the practice of the British Parliament, and was in full exercise in our colonial legislation, and now belongs to the legislation of every State in the Union as matter of constitutional right."

It seems to us that the views expressed in the authorities we have cited are sound and are applicable to this case. It would be a narrow view of the constitutional provision to limit it to words spoken in debate. The reason of the rule is as forcible in its application to written reports presented in that body by its committees, to resolutions offered, which, though in writing, must be reproduced in speech, and to the act of voting, whether it is done vocally or by passing between the tellers. In short, to things generally done in a session of the House by one of its members in relation to the business before it."

Thus freedom of speech is guaranteed to a member of legislature certainly at least while performing his legislative duties.

This privilege is not alone for the protection of the members personally of the legislature, but rather to protect and support

the rights of the citizens of the state and the privilege is absolute so long as it relates to acts done in relation to legislative matters. *Coffin* v. *Coffin, supra.*

*Monahan* v. *Hollingshead* (not officially reported) has no application to the questions here under consideration. It did not involve a pleading or parties in a judicial proceeding.

The defendant's statements and other matters complained of in the complaint were made in a judicial or *quasi*-judicial proceeding as a member of the General Assembly after a resolution of impeachment had been introduced by him in the House of General Assembly containing the words complained of and after a resolution had been adopted by the House of General Assembly referring it to its duly constituted judiciary committee. Privilege as a defense as pleaded in fifth separate defense will stand. *LaPorta* v. *Leonard,* 88 *N. J. L.* 663; 97 *Atl. Rep.* 251; *Rogers* v. *Thompson,* 89 *N. J. L.* 639; 99 *Atl. Rep.* 389; *McCrann* v. *Gaul,* 95 *N. J. L.* 393; 112 *Atl. Rep.* 341; *Id.,* 96 *N. J. L.* 165; 112 *Atl. Rep.* 603; *Alagna* v. *N. U. and Cuba Mail S. S. Co.,* 155 *Misc.* 796; 279 *N. Y. S.* 319; *Yancey* v. *Kentucky,* 135 *Ky.* 207; 122 *S. W. Rep.* 123.

The plea of truth is a good defense and therefore the sixth separate defense will not be stricken.

At the time of oral argument and in his brief defendant asks leave to amend the second and third separate defenses by adding his honest belief of the truth of the alleged words spoken and without malice. This amendment will be allowed and the defenses stand.

No argument is submitted on this motion to strike paragraphs 4 and 7 of the first count.

There is no motion before this court to strike the first separate defense or the answers to the first and second counts except as herein noted.

The motion to strike portions of the answer filed by the defendant in accordance with notice of motion setting forth said portions of answers and objections thereto pursuant to reservation of motion to strike same contained in plaintiff's reply is denied.

Kindly submit an order accordingly.